23  237
69   47

23  237
70  429

## CONCORD RAILROAD v. GREELY.

On a trial by a jury for damages, to be awarded to a land owner, for land taken by a railroad corporation in making their road, evidence to prove that before the railroad was constructed, a river, at high water, deposited large quantities of sediment upon the petitioner's meadow, which greatly enriched it, and that an embankment made by the railroad in its construction, had materially diminished the deposits, in quantity and fertilizing properties, and that the loss had been the effect of the entire embankment, and not merely of that part which was upon the petitioner's land, was held admissible.

The testimony of experts may be received on questions of science, trade, or skill, and others of a like kind, but not upon subjects of general knowledge, which are understood by men in general and which a jury are presumed to be familiar with.

On a question of railroad damages, a witness connot be permitted to testify, as to inconveniences which he has suffered on his farm by the ordinary running of railroad cars, for the purpose of showing the inconveniences suffered by one owning a farm in that vicinity, as such evidence would raise an issue collateral to that on trial.

The statute makes no provision for interest, in cases of lands taken for railroads, but where the amount has been fixed by the award of the commissioners, the court have allowed interest for the detention, from the time of the award, unless the corporation make a tender, in cases arising under the act of 1837, or deposit the money, in cases arising since the act of 1844.

. PETITION for a jury. Under the law of January 13, 1837, the corporation applied to the court of common pleas of this county to assess damages for their right of way. The committee appointed by the court awarded, on the eighth of September, 1841, nine hundred dollars to said Greely, and made a final report at February term, 1842. The corporation then brought into court the nine hundred dollars and costs, and the amount has ever since been deposited, subject to the order of Greely; but he has never accepted it, and the cause is now before the court, upon his petition for a jury.

The railroad, as constructed according to its original location, forms a high embankment across a meadow upon the Merrimack river, belonging to Greely and adjoining owners, above and below. The court admitted evidence to prove that before the railroad was constructed, the river at high water, deposited large

quantities of sediment upon his meadow, which greatly enriched it, and that the embankment has materially diminished the deposits in quantity and fertilizing properties. The evidence tended to show that this loss has been the effect of the entire embankment, and not merely of that part which is upon Greely's land. This evidence was excepted to, but admitted.

The court also admitted testimony, subject to exception, to prove what the corporation, about the time Greely's land was taken, paid to other owners in the vicinity, for the right of way over their lands, and that about the same time the corporation, offering to sell a tract adjoining Greely's, asked $1000, and refused $800, for it.

The counsel for Greely contended that a railroad makes the cultivation and management of farms, through which it goes, inconvenient, troublesome, and expensive; and inquired of a farmer who lived in Greely's vicinity, and through whose farm the railroad passes, what inconveniences he had experienced from the railroad in carrying on his farm. The question was objected to as incompetent. The court ruled that the witness might state, as a matter of fact, what inconveniences he had suffered from the ordinary running of the cars, but not injuries resulting from accident or from carelessness. In the course of his answer the witness said that he was once detained at a crossing on his farm by a passing train of cars, and got his load of hay wet by a shower which was coming up; but no exception was taken to this part of the answer, unless that before mentioned is to be so considered; and the court were not requested to make any ruling upon the subject, except as to the competency of the above question.

The counsel for the corporation requested the court to instruct the jury, that Greely could not, in this proceeding, recover for incidental damages, resulting from the building of the road over the land below him, or over his own land, but that his remedy, for such incidental damages, (if he has any remedy,) is by an action upon the case. But the court declined so to instruct the jury, and on the contrary did instruct them, that the law neither made the corporation liable, as wrong-doers, for in-

jury resulting from a proper construction and use of the road, nor obliged Greely to suffer the loss without compensation, and that in addition to the value of the land within the limits of the survey, the jury should take into consideration the inconvenience and damage in respect to the residue of the farm, which must result to Greely from a careful and proper construction and use of the railroad over his and the adjoining lands, such as the loss of sediment, and hindrances and increased expense in carrying on the business of his farm; that the question of damages was to be determined as of the time when the property was appropriated, in 1841; but so far as subsequent events tended to show what the damage then was, they were to be consided, but no further.

The jury were instructed that the prices paid by the corporation to other land owners had some tendency to prove what Greely ought to have, and that the sum for which the corporation offered to sell, and the sum refused, were competent as admissions of the value of the adjoining lands, and had some tendency to prove the value of Greely's land, but that none of those prices were conclusive upon either party in this suit.

The counsel for Greely contended that he was entitled to interest from the time his property was taken. Upon this subject the court charged the jury not to allow interest as a part of the damages, and not to permit any suspicion that Greely might not obtain interest, to induce them to give greater damages than they otherwise would; but that after they had found the actual damages, they might return a separate computation of interest from September 8th, 1841, which would be allowed, if, by law, Greely was entitled to it. Under these instructions, the jury assessed the damages at $1500, and made a separate return of $549 interest on $900, and $366 interest on $600, from September 8th, 1841, but subject to the opinion of the court as to the interest.

The counsel for the corporation moved that the verdict might be set aside because of the rulings and instructions of the court; and also objected to the allowance of interest.

The questions arising upon the case were transferred to this

court for determination; the verdict to be set aside, or judgment to be entered thereon, with or without such interest as the court shall direct.

*D. Clark*, with whom were *Pierce* and *Farley*, for the railroad.

1. The instructions to the jury were clearly wrong. The corporation could not be held liable for damages done by building their road over land not taken from the petitioners. See Laws of 1837, on which this proceeding is founded.

2. The price for land sold for railroad purposes is affected by so many considerations of convenience or inconvenience, in particular cases, that a sale in one case is no rule for another case.

3. The farmer who testified was no expert. The question was objected to, and the answer was pertinent to the question.

4. An offer to sell land has never been held admissible to fix the price in other cases.

5. No interest should be allowed. The money awarded by the committee was paid into court, and has lain there subject to the petitioner's order. Interest is believed not to be allowed in analogous cases.

*Atherton*, with whom was *Parker*, for the petitioner.

1. The whole damage by the railroad to the tract of land must be estimated. No other rule can do justice, and it is believed that no other has been adopted. In the United States Digest for 1849, page 384, the rule is stated to be a fair and just comparison of the value of the whole tract through which the railroad passes, before and after the improvement is made.

2. The sales of land in the vicinity to the railroad company, were of the same interest in the land, for the same purpose, and it is difficult to see on what principle they could be excluded.

3. An expert has been permitted to give an opinion as to the effect of laying a railroad, and the passing of locomotive engines within a certain distance, or the value of rent and the increase of the rate of insurance of a building. *Webber* v. *East-*

Concord Railroad *v.* Greely.

*ern Railroad,* 2 Met. Rep., 147. *A fortiori,* evidence of facts to show the effects of the railroad, in cases similar, was properly admitted under the restrictions laid down by the court.

The counsel upon the other side mistakes our position on this point. The farmer was not introduced as an expert. His opinion was not asked, but only facts within his knowledge. Perhaps, in principle, he might be considered as an expert. He was a farmer, and acquainted with carrying on farms. This may be said to be so well known to the jury, as not to be matter of skill, but of general knowledge. But the point was the effect of the "ordinary running of the railroad cars" on a farm through which they passed. This required the particular position, and opportunity of knowledge of the witness, and is not a matter of general knowledge, nor, until recently, of any actual knowledge. But the witness was only enquired of as to facts; and our argument is, that when an expert may give an opinion, any witness may state facts; and facts, in a case of this kind, must be far more definite and satisfactory, and far less likely to mislead than the mere testimony of experts.

4. If the accidental statement by a witness of what was not asked, nor permitted by the court, could set aside a verdict, few verdicts could stand. Besides, the statement was not objected to at the time, and the court in their instructions rejected, it as being without any applicability.

5. The damages and costs, paid into court by the railroad, were in the nature of a tender in full satisfaction. By accepting them, Greely would have given up his remedy. If there was doubt on this subject, Greely was not bound to run any risk. He has never received the first farthing.

To deprive the petitioner of interest on the value of his land, from the time it was taken from him and converted to the use of the corporation, would be as unjust and unconstitutional as to refuse him all compensation. It would be the same in principle, and, in this case, much the same in effect.

EASTMAN, J. The most important questions raised in this case, as we view them, were recently settled in the case of

*Dearborn* v. *the Boston, Concord and Montreal Railroad,* in Grafton county. Upon the principles laid down in that case, the evidence showing the effect of the building of the railroad upon the plaintiff's meadow, was admissible; and the course taken by the court, in declining to give the instructions requested upon that point, was correct. The general instructions bearing upon the question, and the matters to be taken into consideration by the jury, in assessing the damages sustained, were also in accordance with that decision, and the decision of *March* v. *the Portsmouth and Concord Railroad,* recently decided in Rockingham county. It is believed, too, that they were in accordance with the ruling in like cases throughout the State. The law of 1837, under which this proceeding was instituted, is not so explicit on the question of damages as the general railroad law of December, 1844, but we find nothing in it, that should, in our opinion, change the general doctrine which has been established as the true rule governing questions of this kind.

When the value of a piece of land is to be decided by a jury, it has been the general practice, in this State, to admit evidence of sales of other lands, similarly situated, in the vicinity of that in question, which were made about the time that the value is to be settled; and the evidence, showing what the corporation paid, about the time Greely's land was taken, to other owners in the vicinity, for the right of way over their lands, comes within the principle and was rightly admitted. The corporation did not take the fee; but that can make no difference. A witness may state what was the cost of property of a particular description at a given place, in order to ascertain the value of property of a similar description. *Whipple* v. *Walpole,* 10 N. H. Rep., 130. But evidence of the price for which the corporation offered to sell a tract adjoining Greely's, and how much they refused to take for it, is certainly of doubtful competency. We have held at this term, in the case of *Hersey* v. *the Merrimack County Mutual Fire Insurance Company,* in Merrimack county, that what the owner of a piece of real estate said he would sell the same for, was competent evidence against him, as tend-

ing to show its value.  But that was a statement in regard to the value of the land itself, while the evidence admitted here was going one step further ; it was a statement in regard to other lands ; and it is quite questionable whether it could have any legitimate tendency to prove the value of Greely's land.

It is, however, unnecessary to decide the point, as the evidence admitted in regard to the injuries and inconveniences received by another person upon his farm, from the ordinary running of the cars, cannot, we think, be admissible upon any view which we have been able to take of it.  On questions of science, skill, or trade, or others of a like kind, experts may not only testify to facts, but are permitted to state their opinions.  1 Greenl. Ev., § 440.  But upon subjects of general knowledge, which are understood by men in general, and which a jury are presumed to be familiar with, witnesses must testify as to facts alone and the jury must form their opinions.  In such cases the testimony of witnesses, as experts merely, is not admissible.  A large portion of our jurymen are usually farmers, and upon the facts stated, and their own knowledge connected with railroads, can as well judge of the effects upon a farm, through which a railroad passes, as other farmers.

But it is contended that what the witness testified to, was matter of fact within his own knowledge, and being confined by the court to the inconveniences suffered by the ordinary running of the cars, was admissible as tending to show the inconveniences which Greely must have suffered.  It appears to us, however, that this is an erroneous view of the question.  Greely could undoubtedly show every thing connected with the manner in which the road was made across his land, and the actual inconveniences which he had himself suffered ; and if the road was suitably and properly made, all this would be competent for the consideration of the jury.  From these facts, and their general knowledge of the subject, they could make up their verdict.  But to lay before the jury the inconveniences which other farmers in the vicinity had suffered, and require of them to assess the damages according to those facts, would be to try the issue, not upon the actual facts which could be shown in the

case, but upon collateral facts arising in other cases. The court, too, might soon be involved in trying the issues raised upon the collateral facts.

We do not see that the case varies in principle from very many which might be supposed, where the same consequences almost invariably follow certain acts done, or a certain course pursued; and yet, the case itself, must be tried by the facts which actually take place, and not by those which transpire in other parallel cases. The ruling upon this point was incorrect.

The only remaining question, is the one of interest. This proceeding is entirely a matter of statutory regulation. The act provides, that after the committee shall have made their estimate, the corporation may tender to the owner of the land, the damages estimated, in full satisfaction thereof; and, if the land owner shall refuse to receive the same, with costs, to be taxed to that period, and shall apply for a jury, he shall pay all such costs as shall be caused by such application, arising after such tender, unless upon the final hearing, he shall recover a greater amount of damages than the sum tendered. Act of January 13th, 1837, Pamphlet Laws, chapter 280, § 8.

The tender was to be in full satisfaction, and consequently the land owner could not take the amount tendered and proceed for a further sum. But in this case, no tender was made, and the law, so far, was not complied with by the corporation. It is true, that the amount awarded was brought into court after the petition for a jury; but there is no provision of the statute by which it could be done, and there was no obligation upon the petitioner to take the money. It was therefore a nugatory act, so far as the rights of the corporation or petitioner were concerned, and the petitioner would stand upon the same ground as though nothing of the kind had been done. The statute makes no provision for interest in proceedings of this kind; but after a sum has been fixed by the award of the commissioners, unless the corporation shall pursue the requirements of the statute, by making a tender in cases arising under the act of 1837, or depositing the money in cases arising since the statute of 1844, we have allowed interest on the sum awarded from the

time of the award.   In this case interest should be cast on the $900, from the time of the award.

On account of the admission of incompetent evidence, as before stated, the verdict must be set aside, and a

*New trial granted.*